(June 14, 2007)

■ THE DERMOT COMPANY, INC., Respondent, v 200 HAVEN COMPANY, Defendant, and 200 HAVEN LLC, Appellant. [838 NYS2d 507]—

Order and judgment (one paper), Supreme Court, New York County (Marcy S. Friedman, J.), entered January 24, 2006, insofar as it granted plaintiff's motion for summary judgment on the first and second causes of action in the complaint, denied defendants' separate cross motions for summary judgment and dismissed their counterclaims, and order, same court and Justice, entered March 3, 2006, which granted defendant 200 Haven LLC's motion for reargument, and, upon reargument, adhered to its original determination, unanimously modified, on

the law, to deny summary judgment to plaintiff, and otherwise affirmed, without costs.

In this action for specific performance, summary judgment was erroneously granted to plaintiff since issues of fact exist arising from the reasonable, competing interpretations of a $20 million contract of sale. The underlying facts in this appeal are as follows: In December 2004, 200 Haven Company (Haven), a partnership owning and operating a residential apartment building in upper Manhattan (the Property), and the Dermot Company, Inc. (Dermot) entered into negotiations for Dermot to purchase the Property. Two of Haven's 18 general partners, Maks Etingin and Ronald Kremnitzer, negotiated on behalf of Haven. Kremnitzer also assisted in the drafting of the contract. A contract was executed by Dermot and Haven with Etingin and Marion Pheterson, another partner and a member of the Kremnitzer family signing on behalf of Haven. Pursuant to the contract, Dermot agreed to pay $20 million for the Property and deposited $2 million as a down payment.

Paragraph 29 of the contract of sale provided that Haven could unilaterally cancel the contract "should any one of Seller's partners exercise his or her right under the provisions of Paragraph 14 (c) of the Partnership Agreement of Seller."

In pertinent part, paragraph 29 of the contract of sale stated: "[P]urchaser [Dermot] acknowledges and agrees that Seller shall have the right to cancel this Contract at any time upon written notice to Purchaser should any one of Seller's partners exercise his or her right under the provisions of Paragraph 14 [C] of the Partnership Agreement of Seller (which paragraph is annexed as Exhibit 1 hereto) to *inter alia*, demand the sale of the property to a higher bidder or elect to buy out the interests of those partners desiring to sell the property. In the event of cancellation by the Seller pursuant to this paragraph, the sole obligation of Seller shall be to refund Purchaser's down payment . . . . Maks Etingin agrees that he shall not exercise any such rights under Paragraph 14 (c) of the Partnership Agreement."

In turn, paragraph 14 (c) of the partnership agreement in its entirety provided that: "If at any time any Partner desires the Partnership to sell the Property, he shall so notify the other Partners by registered or certified mail. All the Partners then shall have the right for a period of sixty (60) days from the date of mailing to solicit offers from others to purchase the Property. Any Partner may submit one or more bids and may bid for his own account. Upon demand of any partner made by registered or certified mail within thirty (30) days after the end of such

sixty (60) day period the Property will be sold to the highest bidder or sold at the highest price bid to the Partner initiating this procedure (at the option of such Partner) unless the other Partners agree to match the highest bid received, in which event the Partner initiating this procedure shall sell his entire Partnership interest to the Partnership or to the other Partners on the basis of the highest bid received pro rated to his interest, so that the selling Partner receives from the buying Partners the same amount he would have received if the Property had been sold to the highest bidder. The partnership shall not terminate upon such a sale but shall continue without the selling Partner."

On January 11, 2005, Etingin, complying with the first provision of paragraph 14 (c), sent each of the partners a notice about the $20 million offer, stating: "Members of the Kremnitzer family and I desire the Partnership to sell the property on the basis of this bid . . . this notice shall constitute the sixty (60) day notice referred to in Paragraph 14 [C]."

At the conclusion of 60 days, no offers had been received from either third parties or the partners. By notice dated March 11, 2005, Etingin, again complying with paragraph 14 (c) of the partnership agreement, issued his demand "that the property located at 200 Haven Avenue . . . be sold for $20 million."

Four days later, in a letter dated March 15, 2005, Kremnitzer informed Etingin that "pursuant to paragraph 14 (c) of the partnership agreement, I on behalf of myself and each of my children . . . hereby agree to match the $20 million dollar bid."

In a notice dated April 11, 2005 and signed by Etingin and Marion Pheterson, Haven canceled the contract of sale, and returned Dermot's $2 million down payment, with interest. Approximately 10 days later, Dermot commenced this action seeking, inter alia: (1) a declaratory judgment that the contract of sale remained in full force and effect and that Haven was obligated to convey title to the premises to Dermot; and (2) specific performance on the contract of sale.

Haven filed an answer with affirmative defenses and counterclaims seeking, inter alia, a declaratory judgment that the contract of sale was validly canceled. By stipulation, Haven LLC, Kremnitzer's limited liability company which had executed a contract of sale for the Property subsequent to the cancellation of the Dermot contract, was added as a party. In May 2005, Dermot moved for summary judgment. Dermot argued that Haven LLC's "matching" argument was misplaced, and contended that its own agreement to the cancellation clause was predicated on its understanding that a "matching" bid

would not give any partner rights to purchase the Property. Haven cross-moved for summary judgment dismissing the complaint. Haven LLC intervened and cross-moved for summary judgment.

By decision read into the record on December 14, 2005, the court granted Dermot's motion holding, inter alia, that Dermot was entitled to declaratory judgment that the contract of sale remains in full force and effect, and for judgment for specific performance of the contract of sale. The court held:

"resolution of the instant case turns . . . in the first instance, on interpretation of the contract of sale between [Dermot] and [Haven]. This contract unambiguously provides that the sale may be cancelled only in the event a partner makes a *higher* bid.

"Paragraph 29 [of the contract of sale] contemplates the exercise of partners' rights under 14 [C] of the Partnership Agreement, but also provides that the sale is off in the event of a 'higher' bid. Thus, however the Partnership Agreement may be interpreted as between the partners, as applied to the purchaser *in this case the sale can be cancelled only if a partner makes a higher bid.*" (Some emphasis added.)

Haven LLC, the sole appellant here, asserts that the court erred by narrowly interpreting paragraph 29 of the contract of sale as incorporating some, but not all, of the cancellation provisions found in Haven's partnership agreement at paragraph 14 (c). Haven LLC correctly contends that the court overlooked, or attributed no meaning to the *"inter alia"* language in paragraph 29, and submits that such language unambiguously incorporated all the various cancellation provisions from paragraph 14 (c) of the partnership agreement.

The contract of sale could not be clearer about incorporating in its entirety paragraph 14 (c) of the partnership agreement. The relevant portion of the contract of sale states: "should any one of Seller's partners exercise his or her right under the provisions of Paragraph 14 [C] of the Partnership Agreement of Seller (which paragraph is annexed as Exhibit 1 hereto) to *inter alia*, demand the sale of the property to a higher bidder or elect to buy out the interests of those partners desiring to sell the property." (Emphasis added.)

The motion court, in holding that the "sale can be cancelled only in the event a partner makes a higher bid," ignored or overlooked the accepted meaning of "inter alia," a phrase signalling that, in addition to the rights enumerated, there exist other applicable rights under paragraph 14 (c). It, thus, ignored the incorporation of paragraph 14 (c) in its entirety into the contract

by its physical annexing to the contract, such annexation having been indicated by the subordinate clause in parentheses stating, "which paragraph is annexed as Exhibit 1 hereto."

Further, Haven LLC correctly asserts that pursuant to paragraph 14 (c), a partner has a right to purchase the property by a matching bid made during the 30-day period rather than being obliged to make a higher bid during the 60-day period. Indeed, by clear and unambiguous language, paragraph 14 (c) does contemplate such a situation where it states: "Upon demand of *ANY* partner made by registered or certified mail within thirty (30) days after the end of such sixty (60) day period, *the Property will be sold to the highest bidder OR sold at the highest price bid to the Partner initiating this procedure* (at the option of such Partner) . . . ." (Emphasis added.)

The inquiry does not end here, however, since the phrase "Partner initiating this procedure" is open to competing interpretations. Further, provisions subject to competing, reasonable interpretations raise triable issues of fact precluding summary judgment (*Yanuck v Paston & Sons Agency*, 209 AD2d 207, 208 [1994]; *Deborah Intl. Beauty v Quality King Distribs.*, 175 AD2d 791, 792 [1991]).

Haven LLC argues that Kremnitzer was an "initiating partner"; that in its complaint, Dermot acknowledged that he was an initiating partner, and therefore he, Kremnitzer, has the right to purchase the property by making a matching bid. Dermot argues that only noninitiating partners had the right to make such a bid, and then only to buy the initiating partner's property interest. It also argues that such matching bid was an exercise of bad faith and unfair dealing when Kremnitzer attended the negotiations, and assisted in drafting the contract.*

Dermot further argues that even if paragraph 14 (c) is interpreted to give the initiating partner such a matching bid right, Kremnitzer cannot be viewed as *the* initiating partner since Etingin was also an initiating partner, and paragraph 14 (c) states *"the"* and not *"any"* initiating partner. Haven LLC counters that the provision in the contract of sale excluding only Etingin from exercising any of his rights under paragraph 14 (c) indicates that Dermot understood that any one of the initiating partners alone could exercise such a right.

In any event, another possible interpretation is that the

---

* Certainly, the provision seems to make more sense in a situation where perhaps a partner desires the partnership to sell the property to him all along, but in order for the partnership to get the fairest price, bids are solicited and then the partner makes the purchase at the highest price bid.

"Partner initiating this procedure" refers to the partner making the demand in that "this procedure" is referenced in the same sentence which describes the procedure for making a demand that the property be sold after the 60-day period. If the right to purchase is limited under paragraph 14 (c) just to the partner making the demand, then Kremnitzer could not purchase by making a matching bid since it is Etingin who made the demand in his letter dated March 11, 2005, titled "DEMAND." Further, in his letter of March 15, 2005, Kremnitzer acknowledged Etingin's letter as the demand ("In response to your demand"), although, interestingly, Haven LLC's brief now describes Etingin's letter not as the demand but merely as "a notice to all the partners . . . advising them of the $20 million dollar bid."

Finally, in this case the question arises whether the phrase "highest price bid" triggers the matching-bid right in every situation. Dermot argues that "highest price bid" applies only where there have been multiple bids and not, as in this case, where there was only a sole offer. Haven LLC reasonably argues plain language interpretation that Dermot's $20 million offer was the "highest price bid" as of March 11, 2005. Because the foregoing issues are genuine issues of material fact, the motion court erroneously granted plaintiff summary judgment. Concur—Saxe, J.P., Marlow, Nardelli, Sweeny and Catterson, JJ.